WILLIAM B. BALDWIN, PLAINTIFF IN ERROR, v. THE STATE OF NEBRASKA, DEFENDANT IN ERROR.

1. Criminal Law: INDICTMENT. An indictment for manslaughter is not defective because it does not charge the offense to have been committed with "malice aforethought."

2. ———: PLEA IN ABATEMENT. A plea in abatement to an indictment upon the ground that the grand jury were not legally selected and chosen must point out the particular cause of illegality.

3. ———: INDICTMENT. An indictment may contain a count for murder in the first degree, with one for murder in the second degree, and for manslaughter, when but one homicide is charged.

4. ———: INSTRUCTIONS. Erroneous instructions must be excepted to and brought to the attention of the trial court in the motion for a new trial to be available in a reviewing court, unless the error is so vital in its nature as not to justify the conviction of the accused.

ERROR to the district court for Adams county. Tried below before GASLIN, J. The case is stated in the opinion.

*J. M. Abbott* and *John Saxon,* for plaintiff in error.

Indictment is insufficient. 1 Bishop on Criminal Law, sec. 429. Demurrer to plea in abatement should have been overruled. Demurrer admits facts set up in plea, and indictment ought to have been set aside. Manslaughter is not a degree of the crime of murder, but is a separate and distinct statutory offense, and as such is not within sec. 487 of the criminal code of Nebraska. Comp.

Stat., 737. Sec. 489, of the criminal code under which said verdict is claimed to be authorized is obnoxious to sections 7, 8, 9, 10 and 11, of the Bill of Rights, in so far as it permits a person to be tried for an offense not specifically presented by an indictment. It permits the exact nature and cause of an accusation to be concealed from the accused on trial. Const. Neb., sections 7, 8, 9, 10 and 11.

*C. J. Dilworth,* Attorney General, for the State.

MAXWELL, CH. J.

The plaintiff was found guilty of manslaughter at the May, 1880, term of the district court of Adams county, and sentenced to imprisonment in the penitentiary for ten years. He now prosecutes a writ of error to this court. The bill of exceptions is not signed by the judge, and on motion of the attorney general was quashed. None of the testimony is therefore before the court, and the only errors that can be considered are those presented by the record.

*First.* It is objected that the indictment is insufficient, in that it does not charge that the alleged acts of the accused were of his deliberate and premeditated "malice aforethought."

Whether the indictment is sufficient to sustain a conviction for murder is not now before the court, but it is clearly sufficient to sustain a conviction for manslaughter, and no objection has been pointed out on this ground.

*Second.* It is claimed that the court erred in sustaining a demurrer to the plea in abatement. The plea is as follows: "And now comes said defendant and says, that having heard read the indictment now pending herein against him and hereby reserving other pleas and defenses thereto, avers that the grand jury of the present term of this court was not lawfully selected, chosen and impaneled in this that the vast majority of said grand jurors, for some

reason unknown to this defendant, was selected,·chosen
and taken from a single precinct in said county, to-wit:
Denver precinct, and that said grand jurors were not se-
lected and chosen as nearly as may be in proportionate
number from each precinct in said county," etc.

In *Priest v. The State,* 10 Neb., 393, it is held that a
plea in abatement must state facts and not mere conclu-
sions of law.

Sec. 441, of the criminal code, provides that: "A plea
in abatement may be made when there is a defect in the
record, which is shown by facts extrinsic thereto." It is
essential that the facts should be stated out of which the
defense arises.

Sec. 615, of the code of civil procedure, requires the
county commissioners "to select sixty persons and as
nearly as may be a proportionate number from each pre-
cinct in the county," etc.

Sec. 659 requires the county clerk or his deputy re-
ceiving the names, to write "the name of each person on
a separate ticket, and place the whole number of tickets
into a box or other suitable and safe receptacle," etc.

Sec. 660 provides that "the clerk of the district court
or his deputy, and the sheriff, or if there is no deputy
sheriff, the coroner of the county, shall at least ten days
before the session of the court, meet together and draw
by lot out of the box or receptacle wherein shall be kept
the tickets aforesaid, sixteen names, and the persons
whose names are drawn shall be grand jurors."

There are no facts stated in the plea from which it ap-
pears that the sixty names required by the statute were
not properly selected, the ground of objection being
that a large majority of all those drawn resided in Den-
ver precinct. This of itself is not sufficient to quash the
indictment if the jurors were properly selected. See
*Clark v. Saline Co.,* 9 Neb., 516. The demurrer was prop-
erly sustained.

The third and fourth objections may be considered together, and are in substance that manslaughter is not a degree of the crime of murder, but a separate and distinct statutory offense, and that section 489 of the criminal code is obnoxious to sections 7, 8, 9, 10 and 11, of the bill of rights.

Section 489 provides "that in all trials for murder, the jury before whom the trial is had, if they find the prisoner guilty thereof, shall ascertain in their verdict, whether it be murder in the first or second degree, or manslaughter," etc. There is but one offense charged in the indictment in this case, viz: the unlawful killing of Allen J. Yokum. The different counts in the indictment merely charge the offense in the different degrees to meet the evidence. The reason for this practice is thus stated by Chief Justice Shaw: "The indictment is but the charge or accusation made by the grand jury, with as much certainty and precision as the evidence before them will warrant. They may be well satisfied that a homicide was committed, and yet the evidence before them leave it somewhat doubtful as to the mode of death; but in order to meet the evidence as it may finally appear, they are very properly allowed to set out the mode in different counts; and then if any one of them is proved, supposing it to be also legally found, it is sufficient to support the indictment. Take the instance of a murder at sea. A man is struck down, lies some time on the deck insensible, and in that condition is thrown overboard. The evidence proves the certainty of a homicide, by the blow or by the drowning, but leaves it uncertain by which. That would be a fit case for several counts, charging a death by a blow and a death by drowning, and perhaps a third, alleging a death by the joint results of both cases combined." Bemis' Webster Case, 471. S. C. 5 Cush., 533.

The rule above stated is as applicable to a case of mur-

der under our statute, where the grand jury may be satisfied that a homicide has been committed by the accused, but whether "purposely and of deliberate and premeditated malice," the state may not be able to prove. But the homicide is the only offense charged, and the several counts of the indictment merely charge the different degrees of the offense, and therefore are not in conflict with the constitution.

It is claimed that the district attorney permitted an attorney in the employ of the railroad company to prosecute the indictment and conduct and direct the prosecution. It is sufficient to say, that no objection was made by the accused or his counsel to the attorney in question, assisting in the prosecution, and so far as this record discloses it was with their full concurrence. It is too late to raise the objection for the first time in this court.

A number of objections are made to the instructions, of which but one will be noticed. The twelfth instruction is as follows: "The prisoner has availed himself of the provisions of sec. 473, page 827, Gen. Statute Neb., which allows him to testify in his own behalf, and you will give it such credence as you may think it entitled to, bearing in mind the circumstances under which he testifies, and the vast importance to him to so tell his story as to escape the penalty of the law, applicable to a conviction under the indictment in the case."

The interest of a party in the event of the trial may be shown to the jury for the purpose of affecting his credibility; that is, the jury may consider this interest as a circumstance, which may or may not affect the credibility of the witness. But the court should not cast reflections on the testimony that would destroy its effect before the jury. The error, however, like many others arising during the progress of a trial, may be waived, and will be waived unless objection is made. It is like an error arising from the admission of improper testimony, or refusal

to admit proper testimony. No exception was taken to the instruction, nor was the objection made in the motion for a new trial.

In *Thompson v. The State*, 4 Neb., 530, one Thompson had been convicted of grand larceny and sentenced to imprisonment in the penitentiary. ·In that case larceny was defined as "taking and carrying or leading away the personal property of another, without his consent and against his will, with intent to appropriate the same to the use of the taker." The court say: "An important ingredient that which distinguishes larceny from a simple trespass is omitted." The court therefore granted a new trial because in no view would such an instruction justify a conviction of a felony. But this does not apply to such errors as may be waived.

·The sentence is not in strict conformity to the statute and if insisted upon, will be set aside and a writ of procedendo awarded, requiring the district court to re-sentence the prisoner. But as he has already been imprisoned for more than one year, the judgment will not be set aside, except at his request.

JUDGMENT ACCORDINGLY.